**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FLORENTINA MAYKO,** | : | |
| **Petitioner** | : | **No. 1:23-cr-00110** |
| | : | |
| | : | **(Judge Kane)** |
| **v.** | : | |
| | : | |
| **UNITED STATES OF AMERICA,** | : | |
| **Respondent** | : | |

<u>**MEMORANDUM**</u>

Before the Court is Petitioner Florentina Mayko ("Petitioner")'s Motion to Vacate, Set

Aside, or Correct Sentence under 28 U.S.C. § 2255 (Doc. No. 54), as well as two motions to

appoint counsel (Doc. Nos. 50, 53).  For the reasons that follow, the Court will deny the pending

motions.

**I.      BACKGROUND**

On May 9, 2023, Petitioner was charged by way of an information with one count of

conspiracy to commit health care fraud pursuant to 18 U.S.C. § 1349.  (Doc. No. 1.)  A plea

agreement was filed on the same date.  (Doc. No. 3.)  On May 11, 2023, Petitioner's ex-husband

Aaron Matthew Mayko stipulated his consent to the forfeiture of several jointly owned

properties, because the properties were "proceeds of, [are] derived from proceeds traceable to, or

w[ere] used in any manner or part to commit or facilitate the commission of violations of 18

U.S.C. § 1349."  (Doc. No. 5.)  This case was then referred to the Honorable Martin C. Carlson,

for the purpose of Petitioner's initial appearance and entry of guilty plea.  (Doc. Nos. 9, 10.)

Pursuant to the plea agreement, Petitioner executed a Consent to Proceed Before a United States

Magistrate Judge for a Felony Guilty Plea (Doc. No. 11), an Approval to Institute a Presentence

Investigation before a Conviction of Plea of Guilty (Doc. No. 12), and Waiver of Indictment

(Doc. No. 13).  On June 14, 2023, Petitioner pleaded guilty to one count of conspiracy to commit

health care fraud.  (Doc. Nos. 3, 14.)  The plea agreement notified Petitioner that the maximum

penalty for her charged offense "is imprisonment for a period of 10 years, a fine of $250,000, a

maximum term of supervised release of three years, to be determined by the Court, which shall

be served at the conclusion of and in addition to any term of imprisonment, the costs of

prosecution, denial of certain federal benefits, and an assessment in the amount of $100."  (Doc.

No. 3 at 2.)  The plea agreement further noted that:

> the Court is free to impose upon the defendant any sentence up to and including the
> maximum sentence of imprisonment for ten years, a fine of $250,000 or,
> alternatively, twice the amount of the gross gain or twice the amount of the gross
> loss resulting from the offense, a maximum term of supervised release of up to three
> years, which shall be served at the conclusion of and in addition to any term of
> imprisonment, the costs of prosecution, denial of certain federal benefits, and
> assessments totaling $100.

(Id. at 27–28.)  The plea agreement contained an appellate waiver, indicating that, by executing

the agreement, Petitioner "knowingly waives the right to appeal the conviction and sentence.

This waiver includes any and all possible grounds for appeal, whether constitutional or non-

constitutional."  (Id. at 33.)

The Court adopted the Report and Recommendation of Magistrate Judge Carlson as to

Petitioner's plea of guilty on July 10, 2023, and scheduled sentencing for October 5, 2023.  (Doc.

No. 22.)  Sentencing was ultimately rescheduled to December 14, 2023.  (Doc. No. 34.)  A Final

Presentence Investigation Report ("PSI Report") and First Addendum to that PSI Report

("Addendum") were filed on September 20, 2023.  (Doc. Nos. 28, 29.)  On November 28, 2023,

a Revised PSI Report and Revised Addendum PSI Report were filed as well.  (Doc. Nos. 35, 36.)

On December 7, 2023, Petitioner's counsel filed a Sentencing Memorandum on behalf of

Petitioner.  (Doc. No. 39.)  The Government filed its own Sentencing Memorandum on

December 14, 2023.  (Doc. No. 40.)

On December 14, 2023, the Court held a sentencing hearing and ultimately sentenced Petitioner to thirty (30) months of imprisonment, two (2) years of supervised release, and payment of restitution in the amount of one million, four hundred and eight thousand, nine hundred and seventy-six dollars and forty-eight cents ($1,408,976.48).  (Doc. Nos. 42; 43 at 3, 6.)  The Court issued a preliminary order of forfeiture, noting that Petitioner, as part of her plea agreement, agreed to forfeit several properties in which she maintained an interest, due to the nexus between the crime for which she pleaded guilty and her ownership of the properties.  (Doc. No. 41.)  On January 9, 2024, the Court entered an amended judgment in this case, ordering the forfeiture of Petitioner's interest in three condominiums: (1) 204 33rd Street, #40502, Ocean City, Maryland 21842; (2) 2001 South Ocean Boulevard, #903, Myrtle Beach, South Carolina 29577; and (3) 1501 South Ocean Boulevard, #844, Myrtle Beach, South Carolina 29577.  (Doc. No. 45 at 7.)  On February 22, 2024, the Government filed a motion for final order of forfeiture. (Doc. No. 48.)  In its motion, the Government asserted that Petitioner agreed to forfeit the three listed condominiums as part of her plea agreement in this case.  (Id. at 1–5.)  The Government indicated that Petitioner's counsel did not oppose its motion.  (Doc. No. 48-1.)  On February 29, 2024, the Court issued an Order granting the Government's final motion for forfeiture.  (Doc. No. 49.)

On May 1, 2024, Petitioner filed a "Pro Se Motion for Court to Appoint An Attorney In Forma Pauperis" (Doc. No. 50), before subsequently filing a motion to vacate pursuant to 28 U.S.C. § 2255 (Doc. No. 51).  On May 20, 2024, the Court issued an administrative Order directing Petitioner to complete the attached Notice of Election within forty-five (45) days and advising her that failure to comply would result in the Court ruling on her Section 2255 motion as filed.  (Doc. No. 52.)  On May 22, 2024, Petitioner filed a "Pro Se Motion for Court to

Appoint an Attorney In Forma Pauperis to Assist and Guide Motion Submitted for Ineffective Assistance of Counsel Under Authority of 28 U.S.C. 2255 Coupled With a Stay in Forfeiture Proceedings." (Doc. No. 53.)  On June 1, 2024, Petitioner returned the Notice of Election, noting that she wanted to withdraw her original motion pursuant to 28 U.S.C. § 2255 and file an all-inclusive motion within the one-year time limit prescribed in the statute. (Doc. No. 55.)[1]  On June 5, 2024, Petitioner filed her all-inclusive motion to vacate, set aside, or correct her sentence, along with attached exhibits. (Doc. Nos. 54 through 54-5.)[2]  On June 18, 2024, the Court issued an Order deeming Petitioner's original motion withdrawn, and directing service of Petitioner's all-inclusive motion on the Government as well as the filing of a response within twenty (20) days. (Doc. No. 56.)  On July 8, 2024, the Government filed a brief opposing Petitioner's motion. (Doc. No. 58.)  On July 16, 2024, Petitioner filed a motion for an extension of time to respond to the Government's brief (Doc. No. 59), and the Court granted this motion (Doc. No. 60.)  On August 9, 2024, Petitioner filed a reply brief in further support of her motion. (Doc. No. 61.)  Accordingly, Petitioner's motion is fully briefed and ripe for disposition.

## II.   LEGAL STANDARD

Pursuant to 28 U.S.C. § 2255(a), a federal prisoner may file a motion requesting that the sentencing court vacate, set aside, or correct his or her sentence on the basis "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the [C]ourt was

---

[1] Although the docket indicates that the Notice of Election was filed on June 13, 2024, Petitioner dated her Notice of Election June 1, 2024, making that the date of filing.  See Longenette v. Krusing, 322 F.3d 758, 761 (3d Cir. 2003) (discussing the prison mailbox rule in which "the date on which a prisoner transmitted documents to prison authorities would be considered the actual filing date").

[2] The docket reflects that this motion was filed on June 11, 2024.  However, Petitioner dated the motion and related exhibits June 5, 2024, making that the date of filing.  See Longenette, 322 F.3d at 761.

without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or its otherwise subject to collateral attack."  See 28 U.S.C. § 2255(a). However, Section 2255 does not afford a remedy for all errors that may have been made at trial or during sentencing.  See United States v. Essig, 10 F.3d 968, 977 n.25 (3d Cir. 1993) (citing United States v. Addonizio, 442 U.S. 178, 185 (1979)).  Rather, Section 2255 is implicated only when the alleged error raises "a fundamental defect which inherently results in a complete miscarriage of justice."  See Addonizio, 442 U.S. at 185.  Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petitioner has one year from the time his conviction becomes final to file a Section 2255 motion.  See 28 U.S.C. § 2244.

In order to establish entitlement to relief, a collateral attack of a sentence based upon a claim of ineffective assistance of counsel must meet a two-part test established by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 687–88, 694 (1984).  See George v. Sively, 254 F.3d 438, 443 (3d Cir. 2001) (discussing the Strickland test).  The first Strickland prong requires Petitioner to "establish first that counsel's performance was deficient."  See Jermyn v. Horn, 266 F.3d 257, 282 (3d Cir. 2001).  This prong requires Petitioner to show that counsel made errors "so serious" that counsel was not functioning as guaranteed under the Sixth Amendment.  See id.  To that end, Petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms.  See id. (citing Strickland, 466 U.S. at 688).  However, "[t]here is a 'strong presumption' that counsel's performance was reasonable."  See Horn, 266 F.3d at 282.

Under the second Strickland prong, Petitioner "must demonstrate that [s]he was prejudiced by counsel's errors."  See id.  This prong requires Petitioner to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." <u>See</u> <u>id.</u> (quoting <u>Strickland</u>, 466 U.S. at 694).  Reasonable

probability is defined as "a probability sufficient to undermine confidence in the outcome." <u>See</u>

<u>Horn</u>, 266 F.3d at 282 (quoting <u>Strickland</u>, 466 U.S. at 694).

Further, the <u>Strickland</u> test also applies "to ineffective-assistance claims arising out of the

plea process." <u>See</u> <u>Hill v. Lockhart</u>, 474 U.S. 52, 57 (1985); <u>see also</u> <u>Lafler v. Cooper</u>, 566 U.S.

156, 162 (2012) (holding that the two-part <u>Strickland</u> test applies to guilty pleas based on the

alleged ineffective assistance of counsel).  The only difference is that the second <u>Strickland</u>

element differs slightly, insofar as Petitioner must instead show that "there is a reasonable

probability that, but for counsel's errors, he or she would have proceeded to trial instead of

pleading guilty." <u>See</u> <u>United States v. Nahodil</u>, 36 F.3d 323, 326 (3d Cir. 1994) (citing <u>Hill</u>, 474

U.S. at 56–59).

Notably, Petitioner must make an adequate showing with respect to <u>both</u> prongs of the

<u>Strickland</u> test in order to be entitled to relief.  <u>See</u> <u>Strickland</u>, 466 U.S. at 687.  A failure to

make the required showing on either prong precludes a finding in Petitioner's favor.  <u>See</u> <u>id.</u> at

700.  "Because failure to satisfy either prong defeats an ineffective assistance claim, and because

it is preferable to avoid passing judgment on counsel's performance when possible," courts

should address the prejudice prong first when it is dispositive of a petitioner's claims.  <u>See</u>

<u>United States v. Cross</u>, 308 F.3d 308, 315 (3d Cir. 2002).

## III.   DISCUSSION

### A.      Petitioner's § 2255 Ineffective Assistance of Counsel Claim

In her motion, Petitioner appears to chiefly take issue with the Court's Orders regarding

forfeitures and restitution, <u>see</u> (Doc. Nos 54-1; 54-2 at 2), challenging the quality of the

Government's evidence against her (Doc. No. 54-4), and requesting relief from the ordered

restitution, a stay of "the forfeiture proceedings," as well as "relief of the plea of guilty and sentence of the Court" (Doc. No. 54-5 at 6).  Petitioner further argues that her counsel was constitutionally deficient for several reasons.  First, Petitioner cites the twenty-three (23) years she spent in Romania, noting that English is not her first language, and asserts that she explained an alleged language barrier to her counsel, and despite this, her counsel did not take this into consideration in advocating on her behalf.  (Doc. No. 54-4 at 2–3.)  Petitioner maintains that her counsel "did not prepare a proper defense," insofar as he "did not advocate for [her] rights," and failed to review the file prepared by Petitioner's prior counsel.  (Id.)  Petitioner also alleges that her counsel failed to present mitigation evidence that would have limited her criminal exposure. (Doc. No. 54-1.)

Additionally, Petitioner cites the waiver of her appeal rights in the agreed upon plea agreement, maintaining that her counsel failed to explain to her that she was forfeiting her constitutional right of appeal.  (Doc. No. 54-5 at 3.)  Petitioner takes issue with the ordered restitution, alleging, among other things, that her counsel should have challenged the statute of limitations in her case or obtained an explanation as to the specific amount of restitution.  (Doc. Nos. 54-2 at 1–2; 54-4 at 3.)  Finally, Petitioner takes issue with the imposed forfeiture, arguing that her counsel wrongly failed to challenge the Government's determination that three (3) of Petitioner's properties were to be forfeited as part of her plea agreement.  (Doc. No. 54-4 at 2–3.)[3]

---

[3]  In her original motion to vacate, set aside, or correct her sentence, Petitioner asserts that her counsel failed to request a bill of particulars from the government.  (Doc. No. 51 at 6.)  Because Petitioner does not re-raise this argument in her later-filed all-inclusive motion, the Court does not address it.

Responding to Petitioner, the Government asserts several arguments.  First, the Government maintains that Petitioner's allegations are insufficient under § 2255, insofar as she asserts dissatisfaction with counsel's failure to request changes to her plea agreement, but never actually maintains that she is innocent or that she desires to withdraw the plea agreement.  (Doc. No. 58 at 7.)  Next, the Government asserts that any reliance Petitioner places on English not being her native language is inappropriate, because Petitioner has lived in the United States for several years, was educated at a university in the United States, served in various jobs where she was required to speak English, and informed the Honorable Martin C. Carlson during her plea hearing that she could understand English.  (Id. at 7–8.)  Third, the Government maintains that Petitioner's counsel, contrary to her allegations, presented mitigating evidence in the form of a detailed sentencing memorandum, in which he provided background information, including several character reference letters he had solicited.  (Id. at 10–11.)  Next, the Government asserts that in signing the plea agreement, Petitioner acknowledged forfeiting certain rights and that the forfeiture was knowing.  (Id. at 11.)  The Government maintains that Petitioner's plea agreement featured "meaningful concessions," insofar as it could have pursued additional sentence enhancement or property forfeitures, and it follows that counsel's decision to advise Petitioner to give up constitutional rights in exchange for these concessions is justifiable.  (Id. at 12.)  As it pertains to loss and restitution, the Government asserts that Petitioner's "plea agreement netted her a better outcome than what she would have gotten in the absence of such an agreement. Thus, to the extent counsel advised her that the plea agreement would serve her interests, he was acting well within the wide range of professionally competent assistance permitted under the law."  (Id. at 16.)  Finally, the Government maintains that counsel well served Petitioner, as she was allowed to keep a primary residence for her and her son to live in after she is released from

prison, as well as a luxury vehicle.  (Id. at 18–19.)  Such an agreement, the Government asserts, forecloses Petitioner's argument that her counsel inappropriately convinced her to take the plea agreement.  (Id. at 19.)

In her reply brief, Petitioner raises several points.  First, Petitioner maintains that the "full extent of the law" and "options available concerning restitution" were never explained to her. (Doc. No. 61 at 2.)  Petitioner cites Federal Rule of Criminal Procedure 32 in arguing that she had the right to be advised about a "restitution hearing and/or an appeal."  (Id. at 3.)  Petitioner then makes several assertions about the merits of the case against her (id. at 3–4), before claiming that agreeing to the forfeiture of properties and restitution was not in her best interests (id. at 4).  Petitioner also maintains that a "collateral attack waiver operates [as] a conflict of interest between defense counsel and his client because it is unethical" for counsel to advise taking a plea that includes the inability to raise a later challenge to the sentence.  See (id. at 5.) Petitioner assets that her counsel failed to prepare a proper argument as to the restitution amount. (Id.)  Finally, Petitioner asserts that she and her ex-husband purchased the forfeited properties "with earnings of honest work."  (Id. at 6.)

Upon review of the docket of this matter, the Court concludes that, even if Petitioner could demonstrate that her counsel's performance was deficient, Petitioner has not established that she was prejudiced by any of the alleged deficiencies, or that "but for counsel's errors . . . she would have proceeded to trial instead of pleading guilty."  See Nahodil, 36 F.3d at 326.  To the contrary, Petitioner never mentions the possibility of going to trial, instead merely alluding to the fact that, had her counsel taken certain steps, she would have faced a lower restitution amount.  (Doc. No. 54-2 at 1.)  The Government correctly observes that Petitioner "does not clearly state what relief she seeks," further noting that Petitioner merely suggests that her counsel

should have requested changes to her plea agreement "without specifying" which changes she desires. (Doc. No. 58 at 6–7.)  Put simply, nowhere in Petitioner's motion does she argue that, but for her counsel's deficient performance, she would have rejected the Government's plea offer and proceeded to trial.  Petitioner argues that her counsel advised her to agree to the forfeiture of these properties because the consequences of not doing so could increase the criminal penalties she may face (Doc. No. 54-5 at 1), but this assertion also does not provide the Court with any reason to believe that counsel's performance and advice were erroneous, nor that Petitioner would have gone to trial on this charge had counsel not offered the advice that he did in this case.  To the contrary, as the Government rightly highlights, Petitioner never claims that she is innocent of the charges against her (Doc. No. 58 at 7), and she in fact received a plea agreement in which she was able to keep a primary residence to reside in with her son upon her release, in addition to keeping a luxury vehicle (id. at 18–19).[4]

Put simply, Petitioner has failed to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." See Horn, 266 F.3d at 282.  To the contrary, Petitioner's counsel prepared a sentencing memorandum with character references that he solicited, while also arguing "forcefully at sentencing for a lower Guidelines range and a non-custodial sentence using mitigation evidence that he obtained" (Doc. No. 58 at 20), and as a result obtained a sentence for Petitioner years below the ten (10) years of imprisonment that could have been imposed by the Court.[5]  Upon consideration of the

---

[4]  In her reply brief, Petitioner takes issue with the restitution amount and states that she "was not a leader" in any criminal scheme, but never asserts that she is innocent of the offense for which she was charged and pleaded guilty.  (Doc. No. 61 at 4.)

[5]  Petitioner's counsel's argument in favor of the Court implementing a non-custodial sentence can be found at Docket Number Sixty-Two (62) at pages fifteen (15) through twenty (20).

foregoing, in addition to the fact that Petitioner never alleges that "but for counsel's errors . . .

she would have proceeded to trial instead of pleading guilty," see Nahodil, 36 F.3d at 326, the

Court will deny her motion to vacate, correct, or set aside her sentence.

### B.    Evidentiary Hearing

Section 2255(b) advises that a petitioner may be entitled to a hearing on her motion.  The

decision to hold a hearing is wholly within the discretion of the district court.  See Gov't of

Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989).  Where the record affirmatively indicates

that a petitioner's claim for relief is without merit, the claim may be decided on the record

without a hearing.  See Gov't of Virgin Islands v. Nicholas, 759 F.2d 1073, 1075 (3d Cir. 1985).

In the instant case, the Court finds that "the motion and files and records of this case show

conclusively that the movant is not entitled to relief."  See United States v. Booth, 432 F.3d 542,

545 (3d Cir. 2005) (quoting Forte, 865 F.2d at 62).  Accordingly, the Court finds no reason to

hold an evidentiary hearing in this case.

### C.    Certificate of Appealability

In proceedings brought under Section 2255, a petitioner cannot appeal to the circuit court

unless a certificate of appealability ("COA") has been issued.  A court may not issue a COA

unless "the applicant has made a substantial showing of the denial of a constitutional right."  See

28 U.S.C. § 2253(c)(2).  In other words, a COA should not issue unless "reasonable jurists would

find the district court's assessment of the constitutional claims debatable or wrong."  See Slack v.

McDaniel, 529 U.S. 473, 484 (2000).  Because the Court concludes that Petitioner's claim of

ineffective assistance is meritless for the reasons discussed supra, Petitioner has failed to make a

substantial showing of the denial of a constitutional right.  Jurists of reason would not disagree

with the Court's assessment of Petitioner's claims.  Accordingly, the Court will not issue a COA

in this case.

### D.        Petitioner's Motions for the Appointment of Counsel

Petitioner filed two motions to appoint counsel to assist her in filing her habeas petition

pursuant to 28 U.S.C. § 2255.  (Doc. Nos. 50, 53.)  In her first motion, Petitioner requests

counsel "to assist Petitioner in understanding the Merits, Crux, as well as the Constitutional

Protection of these proceedings."  (Doc. No. 50.)  In her second motion, Petitioner asserts that

she needs counsel "to assist her while this Honorable Court will determine" if she was charged

with conspiracy to commit healthcare fraud, to determine the "acuity liability as to the monetary

dispensation owed by all defendants in this case," as well as to determine if this case should have

been "deferred to 'The Secretary' (O.I.G.) for hearing to determine if an employee of a

healthcare business entity is a person to be financially liable for funds given to a subcontractor."

(Doc. No. 53 at 1.)

It is well established that a criminal defendant does not have a right to counsel during

postconviction proceedings.  See Garza v. Idaho, 139 S. Ct. 738, 749 (2019) (highlighting that

"[t]here is no right to counsel in postconviction proceedings"); see also Romansky v.

Superintendent Greene SCI, 933 F.3d 293 (3d Cir. 2019), as amended (Aug. 9, 2019) (holding

the same).  However, "in § 2255 proceedings, the district court has the discretion to appoint

counsel, so long as the appointment is consistent with the interests of justice."  See United States

v. Mathis, No. 09-cr-00339, 2023 WL 4549984, at *2 (W.D. Pa. July 14, 2023) (citing 28 U.S.C.

§ 2255(g)).  More specifically, 18 U.S.C. § 3006A (a)(2)(B) provides that the Court may appoint

counsel for a habeas petitioner pursuing relief pursuant to 28 U.S.C. § 2255 when "the interests

of justice so require."  See 18 U.S.C. § 3006A (a)(2)(B).  In determining whether to appoint

counsel in the § 2255 context, courts in this circuit have applied the factors articulated by the Third Circuit in <u>Tabron v. Grace</u>.  <u>See</u> <u>Mathis</u>, 2023 WL 4549984, at *2 (citing <u>United States v. Sample</u>, No. 18-cr-00031, 2021 WL 230983 at *2–3 (W.D. Pa. Jan. 22, 2021) (analyzing the <u>Tabron</u> factors in determining whether to appoint a habeas petitioner with counsel)); <u>see also</u> <u>Tabron v. Grace</u>, 6 F.3d 147, 155 (3d Cir. 1993) (providing that "if the district court determines that the plaintiff's claim has arguable merit in fact and law, the court should then consider a number of additional factors that bear on the need for appointed counsel").

Accordingly, for the reasons discussed <u>supra</u>, the Court finds that Defendant fails to demonstrate that her claim for relief "has arguable merit in fact and law."  <u>See</u> <u>Tabron</u>, 6 F.3d at 155.  Petitioner's filings indicate that she believes that she received ineffective assistance of counsel during the process of entering into a plea agreement with the Government.  However, the Court has determined <u>supra</u> that Petitioner's ineffective assistance of counsel argument is without merit.  Accordingly, the Court will deny both of her motions to appoint counsel.

## IV.    CONCLUSION

For the reasons discussed herein, the Court will deny Petitioner's motion to vacate, and will not issue a certificate of appealability.  The Court will also deny her two motions to appoint counsel.  An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania
